UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK MOLLOY,

      PLAINTIFF,

v.                                              CASE NO. 06-13965

GRAND RIVER NAVIGATION         HONORABLE SEAN F. COX
COMPANY, INC.,

      DEFENDANT.
_____/

**OPINION & ORDER**

On September 8, 2006, crew member Mark Molloy ("Plaintiff" or "Molloy") filed suit against vessel owner Grand River Navigation Co. ("Defendant" or "Grand River") for injuries allegedly incurred on September 9, 2005, alleging unseaworthiness and Jones Act violations. The matter is currently before the Court on Defendant's Motion for Summary Judgment. The parties have briefed the issues and the Court heard oral argument on September 6, 2007. For the reasons below, the Court shall grant the motion with respect to Plaintiff's claim for "maintenance and cure" but shall deny the motion in all other respects.

**Background**

Plaintiff's personal injury claims arise out an accident that occurred aboard Defendant's ship, the M/V (motor vessel) Calumet, on September 9, 2005. At that time, Plaintiff was employed by Defendant as an ordinary seaman, performing the functions of a deckhand.

Plaintiff testified that at approximately 4:00 a.m. on that date, he and his fellow members of the deck crew began working to clean the vessel's cargo hold in preparation for loading at their next port of call in Cedarville, Michigan. (Pl.'s Dep. at 34-35; Def.'s Br. at 1). As the ship

neared port, Plaintiff and fellow deckhand Dennis Nelson ("Nelson"), assisted by Bosun Harry Guenterberg "(Guenterberg") were in the process of opening the vessel's telescoping hatches, up on the deck, when Plaintiff was injured. (*Id.*).

Due to the short distance between Cedarville and their last port of call, Plaintiff testified that they were working at a frenzied pace to the get the hatches open. (Pl.'s Dep. at 34, 48, 62-63). Nelson was to open the hatch covers on one side of the vessel (the starboard or right side), while Plaintiff opened the hatch covers on the other side (the port or left side of the vessel).

The bosun typically assists in the process of opening the hatches by running the winch to pay out the wire, although wire can be pulled from the winch if it is in the neutral setting. Deckhands are not allowed to operate the hatch cover winches themselves – only the bosun or another supervisor may operate the winches. Because there was only one bosun and two deckhands, the bosun could only assist one deckhand at a time. Guenterberg first assisted Nelson on the starboard side hatch while Plaintiff began hauling the wire and bridle on the hatch no. 2 on the port side by himself.

Plaintiff testified that the proper procedure is for the bosun to verbally warn the deckhand prior to introducing slack into the wire. Guenterberg also testified that would be the proper procedure:

> Q. All right. So back to my earlier question before we kind of got sidetracked there, if you were to approach a winch where the deckhand was already pulling the wire off the winch drum by himself would you first warn him or call out to him before you engaged the winch in a payout mode?
>
> A. Yeah, you would, you would want to do that.
>
> Q. Right. And the reason you would want to do that is that if the deckhand is in the process of pulling the cable off the winch drum he's obviously

>   going to have his back to you and the winch so he wouldn't know that you were even there, right?
>
> A. Yes.
>
> Q. And you would want to alert him before you did anything with the winch that would interrupt the manner in which he was pulling it off the drum, correct?
>
> A. Yes.

(Guenterberg Dep. at 27-28).

Plaintiff testified that on the date in question he was pulling the port hatch cable off the port winch drum by himself with considerable effort when suddenly, and with no warning, slack was introduced into the cable causing him to fall forward landing forcefully onto his right knee. Plaintiff testified that "[a]ll of a sudden I had nothing but air and I slammed the knee right in the deck." (Pl.'s Dep. at 37). Plaintiff described it as being like "tug of war and somebody lets go of the rope." (*Id*. at 62-64). He testified that "[n]ormally if you're in a situation like that the bosun always hollers Hold up, I'll pull you some slack. My back is to him, I can't see him, I don't know – I'm just trying to get my job done. He never gave me any warning, he just pulled slack on me and I mean I went down right now. (*Id.* at 45). Plaintiff attributes the accident entirely to Guenterberg pulling slack without warning. (*Id.* at 67-69).

Plaintiff testified that Guenterberg's nickname was "Harry the Deckhand Killer," and that the reason that Plaintiff was aboard the vessel at that time was that Guenterberg had injured another deckhand and Plaintiff was called to replaced that injured worker. (*Id*. at 38).

Nelson testified that Guenterberg was assisting him with Hatch No. 1. He states that when he was getting his cables ready to open up his next hatch he heard Plaintiff's cables and chains drop and Plaintiff yelled out in pain. (Nelson Dep. at 5). He further testified:

> Q. What was Mr. Guttenburg [sic] doing prior to you hearing the sound of the chains fall and Mr. Molloy scream out in pain?
>
> A. Just before that, he had been paying out my cables. Then while I was walking up to the centerline, I guess that he was walking over to the other winch controls.

(*Id*. at 6). When he approached Plaintiff, Nelson saw that "[h]is cables and chains were directly behind him, stretched out straight back towards the winch controls." (*Id*. at 7). He further testified:

> Q. Okay. Based on what you heard and what you saw when you arrived on the scene, referring to how he was laid out and how the cables were trailing behind him in a straight line, did you come to any sort of conclusion as to what happened to Mr. Molloy?
> . . . .
> A. Okay. Based on what I seen and the position I found Mark Molloy in, I can surmise that he was pulling on the cables, working his way up the deck, when tension was released on the cables by operating the payout on the winch control. The only person in the vicinity of those controls was Harry Guttenburg [sic], so I'm sure he played out the cables.

(*Id*. at 7-8). Nelson also testified as follows:

> Q. Okay. And, if Mr. Molloy had been pulling the port winch cable – or the port hatch cable, I should say, unassisted with the kind of tension and – and effort that would've required and tension were suddenly released from the cable, would that cause a person to fall forward with the cable?
> A. Yes, it would.
> . . . .
> Q. All right. From the time that you started to prepare to make your turn in towards the hatches and the time that you heard Mr. Molloy fall and call out for help, was that sufficient time for Mr. Guttenburg [sic] to walk from the starboard winch controls to the port winch controls?
> A. Yes, it would be.

(*Id*. at 15-16).

Nelson states that after the accident other crew members joked about Harry "taking out another deck hand" and that a week prior Guenterberg had injured another deckhand. (Nelson

4

Dep. at 17-18). When asked about Guenterberg's reputation for safety, Nelson stated that "Harry is not always paying close attention to what's going on. He does not have situational awareness." (*Id*. at 19).

Guenterberg denies that he caused Plaintiff's accident by introducing slack in the wire. (Guenterberg Dep. at 41-42).

Plaintiff filed this action on September 8, 2006, alleging: 1) negligence in violation of the Jones Act; and 2) a claim for unseaworthiness, cure and wages under general maritime law.

Standard of Decision

Summary judgment is only proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In reviewing any motion for summary judgment, the evidence is construed in a light most favorable to the nonmoving party.

In addition, the case law reflects that a lower evidentiary threshold applies when summary judgment is sought on a Jones Act claim. The Sixth Circuit has explained that "[i]n particular, when we review a grant of summary judgment involving claims under the Jones Act, we are mindful of the policy of providing expansive remedies for seamen who are injured while acting in the course of their employment and recognize that the submission of Jones Act claims to a jury requires a very low evidentiary threshold." *Churchwell v. Bluegrass Marine, Inc.,* 444 F.3d 898, 903 (6th Cir. 2006)(Internal quotations omitted). Thus, a plaintiff must offer "more than a scintilla of evidence" in order to create a jury question on the issue – "but not much more." *Id*.

5

In *Daughenbaugh,* the Sixth Circuit explained:

> Our consideration of the propriety of summary judgment in the case at bar is animated by two additional concerns. First, we have previously explained that "there is eminent authority in support of the proposition that issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner." *Rogers v. Peabody Coal Co.*, 342 F.2d 749, 751 (6th Cir. 1965). Second, in light of the "policy of providing an expansive remedy for seamen, submission of Jones Act claims to a jury requires a very low evidentiary threshold; even marginal claims are properly left for jury determination."

*Daughenbaugh v. Bethlehem Steel Corp.*, 891 F.2d 1199, 1205 (6th Cir. 1989).

## Analysis

**A.** **Plaintiff's Jones Act Claim:**

The Jones Act, 46 U.S.C. §688 *et seq*. authorizes seamen to maintain negligence actions for personal injury suffered in the course of employment. *Churchwell*, 444 F.3d at 907.

Defendant contends that it is entitled to summary judgment on Plaintiff's Jones Act claim on two bases. First, it contends that Plaintiff's negligence claim is based entirely on unsupported speculation. Guenterberg denies paying out slack or operating the winch at the time that Plaintiff was injured. Defendant states that there is no evidence to indicate that Guenterberg caused slack and that no one can testify to seeing him do so.

Second, it contends that there can be no liability because Plaintiff's injuries were caused entirely by his failure to use reasonable care under the circumstances. Defendant states that Plaintiff choose to pull the wire on his own and without help although it was the longest wire he had ever pulled. Defendant contends that Plaintiff could have waited for someone to help him pull the wire but chose not to do so and that his failure to exercise ordinary care caused him to trip. Defendant also states that Plaintiff first stated that he had tripped following the incident.

6

In response, Plaintiff contends it has sufficient direct and circumstantial evidence to survive summary judgment, especially under the more lenient standard applied in Jones Act cases. Plaintiff contends that the evidence shows that Guenterberg pulled slack into the port hatch cable without first warning Plaintiff that he was doing so. Plaintiff contends that his testimony, along with the testimony of Nelson, is sufficient to create a genuine issue of material fact as to whether Guenterberg introduced slack without warning, thereby causing the accident. Plaintiff asserts that circumstantial evidence is sufficient, citing *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 329-30 (1960). Plaintiff contends that the circumstantial evidence here, and the inferences that can be drawn from it, create a genuine issue of fact for trial.

Plaintiff further asserts that there is no evidence that Plaintiff was comparatively negligent, and even if there were, if would only serve to reduce rather than bar his recovery because Maritime law espouses a system of comparative negligence under which a plaintiff's negligence does not preclude recovery. *Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1459-63 (6th Cir. 1993).

The Court agrees that Plaintiff has submitted sufficient evidence to survive summary judgment. Although Plaintiff does not have direct evidence that Guenterberg introduced slack into the wire (*i.e.* a witness that actually saw him do it), direct evidence is not required. Circumstantial evidence can be sufficient. *Michalic*, 364 U.S. at 330-31. The Court concludes that the circumstantial evidence presented, and the inferences permissible from same, are sufficient to survive summary judgment under the standard applied to a Jones Act claim.

The Court also finds Defendant's request for dismissal based on Plaintiff's own negligence to be without merit. It is well established that "Maritime law espouses a system of

comparative negligence, in which a plaintiff's negligence does not preclude recovery."[1]

*Churchwell,* 444 F.3d at 908. Rather, if evidence of a plaintiff's comparative negligence exists, "the issue of the plaintiff's comparative negligence is submitted to the jury and the plaintiff's damages are reduced by the degree of fault that the jury assigns to the plaintiff's behavior." *Id.*

Accordingly, the Court shall deny summary judgment with respect to Plaintiff's Jones Act claim.

**B.    Plaintiff's Unseaworthiness Claim:**

Because Plaintiff blames his accident upon Guenterberg's actions, Defendant anticipates that he will attempt to support his claim for unseaworthiness on the same basis as the Jones Act claim. Thus, Defendant asserts this claim must also be dismissed because Plaintiff bases the claim on unsupported speculation.

"Generally, unseaworthiness is a question of fact for the jury and should not be resolved by the district court as a matter of law." *Churchwell,* 444 F.3d at 904. The Court concludes that this case is not one of those very rare instances where ruling as a matter of law would be appropriate. Plaintiff has submitted sufficient direct and circumstantial evidence to survive summary judgment. Accordingly, summary judgment shall be denied with respect to Plaintiff's unseaworthiness claim.

**C.    Plaintiff's Claim for Maintenance and Cure:**

Plaintiff's complaint seeks maintenance and cure under general maritime law. (Compl. at ¶ 2). At his deposition, however, Plaintiff testified that he does not have a claim against

---

[1]The only exception to this rule is the "primary duty doctrine," and neither party contends that doctrine applies here. *Churchwell*, 444 F.3d at 908.

Defendant for failure to pay maintenance and that he has no claim against Defendant for failure to pay any medicals bills. (Pl.'s Dep. at 140-141). Accordingly, Defendant is entitled to summary judgment with respect to Plaintiff's claim for maintenance and cure.

## Conclusion & Order

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.** Defendant's motions is **GRANTED** with respect to Plaintiff's claim for maintenance and cure. The motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 17, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 17, 2007, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager